OPINION OF THE COURT
Franklin R. Weissberg, J.
In this action, the plaintiffs allege that the defendants maintain a housing policy which violates the prohibition in both the New York State and New York City Human Rights Laws against discrimination on the basis of marital status. They also allege that the defendants’ housing policy violates the New York State Roommate Law by restricting occupancy in university housing and the New York City Human Rights Law by having a disparate impact on homosexuals. The defendants have moved to dismiss the complaint in its entirety for failure to state a cause of action.
*831 BACKGROUND
The plaintiffs are medical students enrolled at the defendant Albert Einstein College of Medicine. Einstein is a division of the defendant Yeshiva University. Plaintiffs Levin and Jones are lesbians who assert that they each have a long-term, committed relationship with a life partner.
Einstein offers housing accommodations at below market rates to its students in apartment buildings located near its campus. This housing is made available solely to students, along with the students’ spouses and dependent children. The college requires proof of marriage in order for spouses to reside in the apartments.
Levin and Jones allege that although they themselves were offered accommodations, their request to have their respective partners live with them was denied because they were not married. As a result, according to Levin and Jones, they accepted the safe and affordable housing offered by the college and were forced to live apart from their partners. They allege that they each eventually moved out of their university apartments in order to live with their partners.
Both the New York State Human Rights Law and the New York City Human Rights Law make it unlawful to discriminate on the basis of marital status. (See, e.g., Executive Law § 296 [2-a], [4], [5] [a] [1]; Administrative Code of City of NY § 8-107 [5].) The plaintiffs allege (first, second, third, fourth and fifth causes of action) that the defendants’ housing policy violates these provisions by allowing married spouses of Einstein students to live in university housing while prohibiting nonmarried partners from doing the same.
The plaintiffs also allege (sixth cause of action) that the defendants’ policy violates the New York State Roommate Law (Real Property Law § 235-f). The Roommate Law provides that it shall be unlawful for a landlord to restrict occupancy of residential premises to a tenant and the tenant’s immediate family. The statute further provides that any rental agreement must permit occupancy by the tenant, the immediate family of the tenant, one additional occupant and the dependent children of the occupant.
Finally, under the New York City Human Rights Law, a policy or practice which has a disparate impact to the detriment of a group which is protected therein is unlawful unless it is shown that the policy or practice bears a significant relationship to a significant business objective. (See, Administra *832 tive Code § 8-107 [17].) Noting that discrimination on the basis of sexual orientation is prohibited by the City Human Rights Law, the plaintiffs allege (seventh cause of action) that the defendants’ policy has a disparate impact on homosexuals because, unlike heterosexuals, they are unable to marry their partners and are therefore absolutely barred from residing in university apartments with their partners.
DISCUSSION
1. Discrimination on the Basis of Marital Status
The plaintiffs argue that the statutory prohibition against discrimination on the basis of marital status requires that non-marital relationships between two committed and loving partners be accorded the same rights as are otherwise accorded marital relationships. The Court of Appeals has rejected this broad interpretation of the applicable City and State statutes. In Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506, 512 [1980]), the Court concluded that the proscription against discrimination on the basis of marital status does not cover discrimination based on an individual’s “relationships” (emphasis in original text). Rather, the Court held that this prohibition only applies to discrimination against an individual because that person is single, married, separated, divorced or widowed. As the Court explained, it would, for example, be unlawful for an employer to hire or fire someone because that person falls within one of these classifications. (Supra, at 510.)
Here, none of the plaintiffs has alleged that she herself was denied university housing because of her marital status. On the contrary, each of the plaintiffs was offered and accepted housing accommodations at Einstein. Thus, the plaintiffs were not individually prevented from obtaining university housing.
The plaintiffs nevertheless argue that they were in fact discriminated against individually because, unlike married students, they were not allowed to reside in university housing with a person with whom they have established an intimate and committed relationship. In Hudson View Props. v Weiss (59 NY2d 733 [1983]), the Court of Appeals rejected such an argument. There, the plaintiff was a named tenant whose lease limited the occupancy of her apartment to her and the members of her immediate family. When her landlord sought to evict her from the apartment because she had been residing there with a man to whom she was not married but with whom she had a loving relationship, she commenced an action claiming that *833 she had been discriminated against on the basis of her marital status. In denying the tenant’s claim, the Court reiterated the conclusion which it had earlier reached in Manhattan Pizza Hut (supra) that a person’s right not to be discriminated against on the basis of marital status does not extend to that person’s relationship with another person. (Supra, at 735.) Since the tenant in that case had not been evicted because she was single, the Court found that the statutory proscription did not apply. Thus, the Court clearly held that the prohibition against discrimination on the basis of marital status does not prevent a landlord from recognizing the institution of marriage and distinguishing between married and unmarried couples. (See also, McMinn v Town of Oyster Bay, 105 AD2d 46, 50 [2d Dept 1984], affd 66 NY2d 544 [1985] [restriction against occupancy by persons who have no familial relationship does not constitute illegal discrimination based on marital status under the State Human Rights Law].)
The plaintiffs, however, assert that the precedential value of Hudson View (supra) has been substantially circumscribed by the subsequent Court of Appeals decision in Braschi v Stahl Assocs. Co. (74 NY2d 201 [1989]). I disagree. In Braschi, the Court found that the provision in the rent control laws which protects families against sudden eviction should not be rigidly restricted to blood relatives or those people who have formalized their relationship by obtaining a marriage certificate. Rather, the Court held that in the context of eviction, a more realistic and equally valid view of a family includes “two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence.” (Supra, at 211.)
In reaching this decision, the Court never suggested that there was any general prohibition against treating married and nonmarried couples differently. Instead, the Court only found that since the rent control regulations at issue in that case did not employ any word or phrase which refers to the institution of marriage, the term “family” as used therein could and should be construed to include nonmarital partnerships. Implicit in the decision is the recognition that the right to succeed to the tenancy of a rent-controlled apartment could have been expressly limited under the regulations to marital partners and the other members of the tenant’s immediate family. There is no indication that governmental regulations or lease provisions which expressly limit their coverage to married couples were subject to invalidation under the rationale of *834 the Court’s decision. On the contrary, the Court expressly stated that its decision was consistent with Hudson View (supra) and reaffirmed the holding in that case that the City and State proscriptions against discrimination on the basis of marital status did not prohibit a landlord from excluding occupancy by an unmarried person with whom the named tenant has a loving relationship. (See, Braschi v Stahl Assocs. Co., 74 NY2d, supra, at 210-211.)
In support of their position, the plaintiffs also rely on a decision of the Appellate Division, First Department, affirming the lower court’s denial of a motion to dismiss an action brought by homosexual New York City school teachers who sought the same health benefits for their domestic partners as were available to the spouses of their heterosexual colleagues. (See, Gay Teachers Assn. v Board of Educ., 183 AD2d 478 [1st Dept 1992].) This case, however, is far from dispositive. The First Department, citing Braschi, merely affirmed the lower court’s decision on the broad ground that the denial of the motion to dismiss was appropriate given the “current state of the law regarding discrimination in [the] area of family relationships.” (Supra, at 478.) Although the plaintiffs in that case had asserted that the challenged policy violated the City and State prohibitions against discrimination on the basis of marital status, the lower court’s decision was primarily addressed towards the plaintiffs’ State equal protection and Federal due process allegations. The First Department’s opinion does not distinguish between these claims and does not discuss the applicability of either Manhattan Pizza Hut (supra) or Hudson View (supra). Moreover, in a recent opinion, the First Department has made it clear that the “current state of the law” does not prohibit a policy which treats married couples different from unmarried couples. (See, Baum v Restaurant Assocs., 252 AD2d 369 [1st Dept], appeal dismissed 92 NY2d 946 [1998].) There, the Court held that the State may exclude unmarried partners of a decedent from bringing a wrongful death action.
Finally, in another recent case, the Appellate Division, Second Department, found that the State prohibition against discrimination on the basis of marital status was inapplicable to a school district policy which, like the policy challenged in Gay Teachers (supra), denied coverage of employee benefits to a school teacher’s domestic partner. (See, Funderburke v Uniondale Union Free School Dist. No. 15, 251 AD2d 622 [2d Dept], lv denied 92 NY2d 813 [1998].) Specifically addressing the State Human Rights Law, the Court stated that it did not find that a *835 domestic partnership is a “marital status” within the meaning of the statute. In addition, citing Hudson View (supra), the Court found that the plaintiff had, in any event, not suffered any discrimination since he himself had not been deprived of any of the retirement benefits available to married employees.
I therefore conclude that the housing policy adopted by the defendants does not violate the provisions under the State Human Rights Law and the City Human Rights Law which prohibit discrimination on the basis of marital status. These provisions do not bar the defendants from distinguishing between married and unmarried couples in the determination as to whom an Einstein student can reside with in university housing. Accordingly, the first, second, third, fourth and fifth causes of action, all of which are based on the plaintiffs’ assertion that they have been discriminated against on the basis of marital status, are hereby dismissed.
2. Disparate Impact
The plaintiffs also argue that the defendants’ policy is prohibited under section 8-107 (17) of the New York City Human Rights Law (Administrative Code § 8-107 [17]) because it has a disparate and detrimental impact on them because of their sexual orientation. The plaintiffs assert that the policy has a disparate impact on homosexuals since, unlike heterosexual couples who choose not to marry, they are not allowed under New York State law to marry their same-sex partner. Thus, according to plaintiffs, the defendants’ policy has a detrimental impact on all homosexual students at Einstein who wish to reside with a partner with whom they have a committed and loving relationship.
The problem with this argument is, again, that the defendants’ policy does not, in fact, have a detrimental impact on a homosexual student’s ability to obtain university housing. As noted previously, all of the plaintiffs were offered housing. Although a gay or lesbian student may be unable to reside with his or her nonstudent partner in the university apartments, the defendants’ policy does not prevent the student herself from residing there.
The plaintiffs’ protestation about the defendants’ policy is directed towards their treatment as members of a couple. The defendants’ policy, however, merely recognizes that this society has accorded significance to the institution of marriage, that a marriage certificate formally legitimizes the commitment of two individuals to each other and that married couples may be provided with certain rights and benefits not available to *836 unmarried couples. (See, Hinman v Department of Personnel Admin., 213 Cal App Rptr 410, 167 Cal App 3d 516, 527 [Cal Ct App 3d Dist 1985].) It is hardly discriminatory for a party such as Einstein to recognize the significance of a marriage certificate. Einstein is not responsible for the fact that gay and lesbian students are unable to provide the college with a marriage certificate which validates their relationship with their partners. The plaintiffs’ real complaint lies not with the defendants but, rather, with the refusal of the New York State Legislature to sanction same-sex marriages. Any change in policy that has such far-reaching ramifications is for the Legislature, not the courts. (See, Phillips v Wisconsin Personnel Commn., 482 NW2d 121, 127 [Wis Ct App 1992]; see also, Matter of Robert Paul P., 63 NY2d 233, 239 [1984].)
Thus, the allegation that the defendants have engaged in discriminatory conduct having a disparate impact on the plaintiffs because of their sexual orientation fails to state a cause of action. The seventh cause of action is therefore dismissed.
3. New York State Roommate Law
The plaintiffs also allege that the defendants’ policy violates their rights under the New York State Roommate Law to have an additional occupant of their choice reside with them in their university apartments. (See, Real Property Law § 235-f.) Although the language of the State Roommate Law would seemingly support the plaintiffs’ argument, its application would be absurd if taken so literally. Under the plaintiffs’ interpretation, not only medical students in university apartments, but undergraduate students in college dormitories would be entitled to have their parents, siblings and any friend reside with them. To be sure, the plaintiffs concede that the statute does not apply to college dormitories. Nevertheless, they are unable to point to any language or provision in the State Roommate Law which supports the distinction which they attempt to draw between university dormitories and the university apartments offered by Einstein.
Clearly, the Roommate Law was not intended to cover the sort of college housing which is at issue in this proceeding. As the defendants point out, the Roommate Law was intended to provide benefits to tenants who lease commercial, residential housing. The housing at Einstein does not fall within this category. It is a temporary residence offered only to students at the medical school and made available only so long as the student is enrolled. It is made available as a benefit and conve *837 nience to students and is, to that end, offered at below market rates. To maximize the number of students who can take advantage of the benefits of such housing and to maintain its low rates, the college may require not only that the student share the apartment, but that the student share a room with another student whom it alone chooses. Moreover, in making these housing decisions, educational institutions such as the defendants have traditionally been accorded “a plenary exercise of discretion.” (Bynes v Toll, 512 F2d 252, 255 [2d Cir 1975].)
Under the circumstances, a law which requires that the landlord allow the tenant to reside with a member of his or her immediate family, as well as a friend of his or her choosing, is simply inapplicable. Thus, the sixth cause of action fails to state a cause of action and is hereby dismissed.
Accordingly, since none of the causes of action states a cause of action, the defendants’ motion is granted and the complaint is hereby dismissed in its entirety.