*497 Smith, J.
(concurring). I agree with the majority that there is no marital status discrimination. I also agree that the plaintiffs have stated a claim under the disparate impact section of New York City Administrative Code § 8-107 (17). Because I interpret that provision differently than the majority does, I concur but do not join the disparate impact section of the opinion.
Plaintiffs are medical students at defendant Einstein College of Medicine, a division of the defendant Yeshiva University, a private educational institution. Defendants offer housing at below market rates in apartment buildings near campus. This housing includes studio, one-bedroom and two-bedroom apartments and is made available to students, their spouses and children.
Plaintiffs Levin and Jones, medical students, alleged that their request to have their same-sex partners live with them was denied because they were not married. Plaintiffs each accepted the affordable housing offered to them as individuals, but later moved out of their university apartments in order to live with their partners.[1]
Plaintiffs commenced an action in Supreme Court, alleging that defendants’ housing policy discriminates on the basis of marital status in violation of the New York City and State Human Rights Laws,[2] violates Real Property Law § 235-f, the Roommate Law, and has a disparate and detrimental impact on gay and lesbian students because it discriminates on the basis of sexual orientation in violation of New York City Human Rights Law. The seventh cause of action alleges specifically:
“38. By allowing married spouses of AECOM students to live in university housing but prohibiting non-married partners of AECOM students to live in university housing, defendants have engaged in a practice that has a disparate impact on lesbians and gay men and that therefore discriminates on the basis of sexual orientation in housing in violation of New York Administrative Code § 8-107 (5) and (17).”
*498 On defendants’ motion, Supreme Court dismissed the complaint. Citing Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506, 512), in which the Court of Appeals concluded that discrimination based on marital status did not cover an individual’s relationships but covered discrimination because a person was single, married, separated, divorced or widowed, the Supreme Court held that plaintiffs failed to state a cause of action for marital status discrimination under the New York City and State Human Rights Laws. The court also concluded that plaintiffs failed to state a cause of action for violation of the Roommate Law, because it was not intended to cover temporary college housing.
Noting that plaintiffs were offered and accepted university housing, the trial court further held that a cause of action under a disparate impact theory did not lie because plaintiffs’ ability to obtain housing was not adversely affected insofar as they were given housing as individuals. The court reasoned that insofar as society generally affords benefits to married couples, it was entitled to act in accordance with such general principles. It reasoned further that plaintiffs’ real complaint lay with the Legislature’s refusal to sanction same-sex marriages and concluded that plaintiffs should seek policy reform with the Legislature.
The Appellate Division affirmed. It concluded that plaintiffs had not stated a marital status discrimination cause of action and cited Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (supra, 51 NY2d 506) and Hudson View Props, v Weiss (59 NY2d 733 [plaintiff whose lease limited occupancy to the tenant and her immediate family but who lived in -the apartment with an unmarried man could be evicted]). It also concluded that plaintiffs had not stated a cause of action for discrimination based on a disparate impact theory because defendants’ policy had the same impact on non-married heterosexual medical students as it had on non-married homosexual medical students. Finally, it concluded that plaintiffs had failed to[1] state a cause of action for violation of the Roommate Law because the policy applied only to premises occupied by a tenant as his or her primary residence and not to tenants living temporarily in student housing.
On this appeal, plaintiffs argue that (1) they have stated a cause of action for violation of the New York City Human Rights Law, New York City Administrative Code § 8-107 (17) because defendants’ housing policy discriminates on the basis *499 of sexual orientation by creating a disparate impact on gay and lesbian students; (2) that the appropriate comparison for disparate impact purposes is between married persons and homosexual persons in committed relationships; (3) that the Appellate Division erred in failing to adequately apply the disparate impact analysis of Griggs v Duke Power Co. (401 US 424); and (4) that the Appellate Division erred in concluding that the defendants’ policy can have no disparate impact because it treats all “non-married” people identically.[3]
Defendants argue (1) that plaintiffs have not alleged a disparate impact claim; (2) that the relevant categories for determining a disparate impact are non-married heterosexual students and non-married homosexual students; and (3) that when the appropriate categories are analyzed, plaintiffs suffered no greater impact as a result of the housing practice than similarly situated heterosexual non-married students.
New York City Administrative Code § 8-107 (17) states, in part:
“An unlawful discriminatory practice based upon disparate impact is established when: (1) the commission or a person who may bring an action under chapter four or five of this title demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter.”
Griggs v Duke Power Co. (401 US 424) does not support the contention of plaintiffs. In that case, where defendant Duke Power Company had a longstanding policy of excluding African-Americans, the Supreme Court held that a test or a high school diploma could not be used to prevent the hiring of African-Americans where neither was necessary for the jobs in question. The Court used disparate impact analysis to reveal the continuing policy of discrimination against African-Americans, discrimination forbidden by title VII of the Civil Rights Act of 1964. In its decision, the Supreme Court stated:
“The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the *500 past to favor an identifiable group of white employees over other employees. Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to ‘freeze’ the status quo of prior discriminatory employment practices” (401 US, at 429-430).
In order to apply Griggs v Duke Power Co. to the facts here, this Court must conclude that the traditional practice of private universities of granting housing preferences to married couples is unlawful discrimination, as well as being unlawful in its discriminatory impact. I am unable to draw that conclusion, particularly when marriage is a fundamental constitutional right (see, Loving v Virginia, 388 US 1; Zablocki v Redhail, 434 US 374) and the State has sought to recognize and support marriage as a positive institution.
Despite the inapplicability of Griggs v Duke Power Co. to the facts here, there is another interpretation of section 8-107 (17) that supports plaintiffs’ position. It is that the legislation is designed to secure for unmarried, committed couples the same benefits as those enjoyed by married persons. Thus, under the legislation, same-sex couples who are in committed relationships would be able to secure housing and other benefits on the same basis as married couples.[4] The language of section 8-107 supports this interpretation. Thus, the action should not be dismissed, and defendants should be given the opportunity to prove that the University’s policy “bears a-significant relationship to a significant business objective” or that there is no disparate impact (Administrative Code § 8-107 [17] [a] [2]).
Chief Judge Kate (concurring in part and dissenting in part). I concur in the majority’s conclusion that plaintiffs have stated a claim that AECOM’s housing policy has a disparate impact on gays and lesbians, in violation of the New York City Human Rights Law, and that the disparate impact claim should be remitted to Supreme Court for further proceedings. I further conclude that plaintiffs have stated a claim of marital status discrimination.
Both the State and City Human Rights Laws make it illegal to withhold a housing accommodation from any person because *501 of that person’s marital status (see, Executive Law § 296 [2-a] [a], § 296 [5] [a] [1]; Administrative Code of City of NY § 8-107 [5] [a] [1]). As this case comes to us in the context of a motion to dismiss, we must, for the purposes of this appeal, take plaintiffs’ allegations as true. Here, plaintiffs allege that they were denied access to partner housing — a type of housing accommodation offered by AECOM — simply because they were not married. AECOM permits married students to live in student housing with their partners; only unmarried students are denied this benefit. When plaintiffs applied for housing for their partners, the sole question asked by AECOM was whether they were married. Since plaintiffs could not present marriage certificates, they were denied access to the housing benefits they sought. For present purposes, these allegations state a claim of discrimination based on marital status.
Our decisions in Hudson View Props. v Weiss (59 NY2d 733) and Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506) are not to the contrary. In Hudson View, a landlord sought to evict a female tenant for violating a provision in the lease limiting occupancy to the tenant and her “immediate family.” The tenant was sharing the apartment with a man who admittedly was not part of her immediate family (59 NY2d, at 735). This Court held that the lease provision was enforceable, rejecting the tenant’s argument that it constituted marital status discrimination. The Court stated, “the issue arises not because the tenant is unmarried, but because the lease restricts occupancy of her apartment * * * to the tenant and the tenant’s immediate family” (id.). Thus, the Court concluded, the “applicability of that restriction does not depend on her marital status” (id.).
The extent of our holding in Hudson View was that a landlord does not engage in marital status discrimination by denying housing to a person who is not part of the tenant’s immediate family. Unlike the tenant in Hudson View, plaintiffs have never admitted that their life partners are not part of their immediate families. Indeed, the gravamen of plaintiffs’ complaint is that they share the same level of commitment with their partners as married persons share with their spouses — that their life partners are members of their immediate families. But AECOM’s policy does not permit students to live in student housing with all immediate family members; rather, it permits them to live only with spouses and children. Thus, AECOM’s policy is not “substantially indistinguishable from the policy considered in Hudson View” (majority opn, at 491).
*502 Significantly, in Braschi v Stahl Assocs. Co. (74 NY2d 201, 211), a plurality of this Court concluded that a tenant’s same-sex life partner qualified as “family” under the non-eviction protection provisions of the New York City rent control law, stating that the term “family” includes “two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence.” Indeed, in Hudson View the Court noted that it was not called upon to address whether the tenant’s boyfriend could become part of her family “by marriage or otherwise” (59 NY2d, at 735). Clearly then, this Court has recognized that the concept of “family” can include more than just married couples and their children.
At the very least, it is a question of fact whether plaintiffs’ life partners qualify as members of their “immediate families.” If they do, the State and City Human Rights Laws prohibit AECOM from denying them partner housing merely because they are unmarried. Since discovery and fact finding on this issue are necessary, the lower courts improvidently granted AECOM’s motion to dismiss.
Similarly inapposite is Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. In that case, the Court upheld Pizza Hut’s anti-nepotism rule forbidding an employee from working under the supervision of a spouse, parent, sibling or offspring. Plaintiff was fired for being married to her supervisor, and she brought suit alleging marital status discrimination under the State Human Rights Law. Recounting the many sound reasons supporting Pizza Hut’s anti-nepotism rule, this Court upheld the termination, stating that the Human Rights Law does not prohibit discrimination based on an employee’s “relationships” (51 NY2d, at 513-514). The Court concluded that plaintiff had not suffered marital status discrimination because she was fired not for being married but “for being married to her supervisor” — a valid anti-nepotism concern (id., at 514).
Here, by contrast, plaintiffs were not denied partner housing because of their relationship to any particular person, and certainly not for violating an anti-nepotism or anti-corruption rule. Rather, they were denied partner housing merely because they were unmarried. Indeed, Pizza Hut itself states that the Human Rights Law bars decisions from being made on the basis of whether a person is “single, married, divorced, separated or the like” (id., at 512). That is exactly what happened here.
*503 As to plaintiffs’ disparate impact claim, the City Human Rights Law makes it illegal to deny access to housing accommodations on the basis of sexual orientation (see, Administrative Code § 8-107 [5] [a] [1]). A prima facie case of discrimination is shown where a facially neutral policy has a disparate impact on a protected group (see, Administrative Code § 8-107 [17] [a] [l]-[2]). If plaintiffs demonstrate a disparate impact and proffer an alternative, less discriminatory policy, the burden then shifts to the defendant to show that a significant business objective is served by its policy (see, Administrative Code § 8-107 [17] [a] [2]).
Here, AECOM’s policy of providing partner housing to married students is facially neutral with respect to sexual orientation. That policy, however, has a disparate impact on homosexual students, because they cannot marry and thus cannot live with their partners in student housing. By contrast, heterosexual students have the option of marrying their life partners.
The Appellate Division erred by holding that the appropriate comparison groups were unmarried heterosexual students versus unmarried homosexual students. This holding defined plaintiffs’ claim out of existence, since the disparate impact is created by AECOM’s restriction of partner housing to married students. As the United States Supreme Court held in Griggs v Duke Power (401 US 424), the comparison groups may not be defined in such a way. Further, it is immaterial that State law permits only heterosexual marriage. The City Human Rights Law specifically bans housing discrimination on the basis of sexual orientation. The State marriage law merely defines who can and cannot marry; it was not intended to permit landlords to violate New York City’s laws against housing discrimination.
Therefore, since plaintiffs have stated a prima facie case of discrimination based on sexual orientation, the case must be remitted for application of the burden-shifting method mandated by the City Human Rights Law.
Finally, I agree that plaintiff Gila Wildfire’s claims must be dismissed for lack of standing.
Accordingly, I would modify the order of the Appellate Division by affirming the dismissal of plaintiff Wildfire’s claims, and by reinstating the marital status and sexual orientation claims asserted by plaintiffs Levin and Jones and remitting those claims to Supreme Court for further proceedings.
*504 Judges Levine, Wesley, Rosenblatt and Graffeo concur with Judge Ciparick; Judge Smith concurs in result in a separate opinion; Chief Judge Kaye concurs in part and dissents in part in another opinion.
Order modified, etc.

. The third named plaintiff, Wildfire, is secretary and treasurer of a lesbian and gay student organization whose members include Levin, Jones and other students negatively affected by the defendants’ policy.

. Specifically, the first five causes of action allege discrimination on the basis of marital status in violation of Executive Law § 296 (5) (a) (1), Administrative Code § 8-107 (5) and Executive Law § 296 (2-a), § 296 (4) and § 296 (5) (a) (3) respectively. The sixth cause of action alleges a violation of the Roommate Law, Real Property Law § 235-f.

. Plaintiffs did not seek leave to appeal the dismissal of their cause of action under the Roommate Law.

. In Baker v State (170 Vt 194, 744 A2d 864) the Vermont Supreme Court held that plaintiffs, same-sex couples were entitled to obtain the same benefits and protections afforded by Vermont law to married opposite-sex couples (id., at 224, at 886), and further held that “the current statutory scheme [would] remain in effect for a reasonable period of time to enable the Legislature to consider and enact implementing legislation in an orderly and expeditious fashion” (id., at 226, at 887). On July 1, 2000, Vermont’s civil unions law took effect (see, Vt Stat Annot, tit 15, § 1204).