Bellacosa, J.
(concurring). Chief Judge Kaye’s opinion of the Court cogently distinguishes respondents’ regulations, challenged on this record, from the respective constitutional limitations on governmental actions found to have been violated in Boreali v Axelrod (71 NY2d 1) and Seawall Assocs. v City of New York (74 NY2d 92, cert denied 493 US 976). I therefore concur and join fully in her opinion. Because I perceive significant practical and governance concerns that merit close attention as an outgrowth of this decision, I add these observations.
In the distribution and delegation of governmental powers, it is quite momentous that any administrative agency should possess the potent public policy power to extend the dura *176 tional and relational sweep of the plurality rationale of Braschi v Stahl Assocs. Co. (74 NY2d 201), including fully into the rent stabilization category and more widely than was allowed even in the rent control field of that case. The case-by-case application of this judicially approved regulatory initiative adds layers of great sensitivity and breadth to the implementation of this case. However high-purposed, well-intentioned and possessed of special expertise respondents’ agency is, the societal equation is delicately weighted with practical, legal and fiscal consequences on all sides. Thus, while I also agree with the Chief Judge’s acknowledgement of the primacy of legislative choices in the field (majority opn, at 174), I believe it useful to go farther and urge the Legislature to carefully assess the sweeping power it impliedly invested in this administrative agency in the execution of a unique human sheltering mission.
In a similar cautionary frame of thought with respect to ensuing judicial branch responsibilities, I also believe that as-applied controversies under the challenged regulations, in contradistinction to the facial challenge of this case, will be profound (Seawall Assocs. v City of New York, 74 NY2d 92, supra). Diminution of alienation and value of affected properties, examined under an as-applied microscope, are bound to seriously affect many people, landlords and tenants alike, and the availability of sufficient, appropriate and affordable dwelling places. It would seem that as-applied challenges will inevitably compel courts to examine tenancy sequences in potentially long and somewhat indefinite time lines and relationships. This will be complicated by the substantial administrative, quasi-adjudicative tasks necessarily implicated. It is virtually certain that long, successive successorships to rent-stabilized leaseholds will not be just theoretical possibilities because, markets being markets, they are likely to bloom as perennials, becoming functionally transformed into perpetual stakeholds. The Legislature should satisfy itself, as the courts will have to, that unwarranted de facto results from administrative quasi-judicial determinations do not constitute the functional equivalent of divestitures from landowners of reversionary rights to their properties without just compensation and due process.
*177 Judges Simons, Titone, Hancock, Jr., Bellacosa and Levine concur with Chief Judge Kaye; Judge Bellacosa concurs in a separate opinion; Judge Smith taking no part.
Order affirmed, with costs.