OPINION OF THE COURT
Pam B. Jackman-Brown, J.
This is a licensee holdover proceeding in which petitioner seeks recovery of the subject rent-stabilized apartment from respondent on the ground that the tenant of record is deceased. *697 Respondent claims a right of succession based upon his relationship with the tenant of record which he contends satisfies the definition of “family member” as set forth in Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2). A trial was conducted on June 12-13 and July 15, 2002.
Upon the testimony of the parties and witnesses and the documentary and demonstrative evidence introduced, the court makes the following findings of fact and conclusions of law.
The respondent testified that he moved into the subject apartment in 1990 and lived with Gerda Devlin, the tenant of record, until her death in 2000. The lease for the term April 1, 1998 through March 31, 2000, however, contains a Division of Housing and Community Renewal form entitled, “Notice To Owner Of Family Members Residing With The Named Tenant In The Apartment Who May Be Entitled To Succession Rights/ Protection From Eviction.” (Respondent’s exhibit Q.) That form lists the respondent as an additional occupant and indicates the date of commencement of primary residence in the apartment by the respondent as 1992. The form was signed by Gerda Devlin and the respondent on January 6, 1998. They do not indicate a familial relationship on the form. The respondent’s signature appears on the renewal leases for April 1, 1994 through March 31, 1996 and April 1, 1996 through March 31, 1998. (Respondent’s exhibits O, P.) The respondent also signed the renewal lease for April 1, 2000 through March 31, 2002, but his signature was whited out while the lease was in the petitioner’s custody and control. (Petitioner’s exhibit 4.) Furthermore, respondent’s life insurance policy of January 28, 1992 lists the subject apartment as his address. (Respondent’s exhibit M.) The uncontroverted evidence establishes that the respondent resided in the subject apartment continuously with Gerda Devlin since 1992. There is also no dispute that the respondent has continued to reside in the subject apartment subsequent to Gerda Devlin’s death. Gerda Devlin died on June 12, 2000.
The respondent further stated that he and Gerda Devlin lived together as husband and wife. Photographs were introduced showing them vacationing together and socializing with various members of each other’s family. The respondent testified that these photographs were taken between 1991 and 1996. (Respondent’s exhibits C-J.) The respondent had two life insurance policies naming Gerda Devlin as sole beneficiary, one for $2,000 effective March 15, 1995 and one for $3,000 effective January 28, 1992. (Respondent’s exhibits L, M, respectively.) *698 Petitioner also did not dispute that Gerda Devlin had a $10,000 life insurance policy naming the respondent as sole beneficiary. The respondent and Gerda Devlin maintained a joint passbook savings account. (Respondent’s exhibits N-l, N-2.) Gerda Devlin also maintained a separate checking account in her name. (Petitioner’s exhibit 11.) The only other bank account during the lifetime of Gerda Devlin for which any evidence was introduced is North Fork Bank (formerly Jamaica Savings Bank) account number 5-613666 in the name of Gerda Devlin “In Trust for Clemens Trockel, Friend.” (See subpoenaed records of North Fork Bank.) That account was opened on July 25, 1994 and was subsequently closed. The subpoenaed records of North Fork Bank also reveal an account in the name of Clemens Trockel (No. 2176002463). There was no testimony or other evidence introduced with regard to this account. Since this account was opened on June 21, 2000 — after the death of Gerda Devlin — it is irrelevant to the inquiry concerning the commingling of assets of the respondent and Gerda Devlin.
The application for letters of administration of Gerda Devlin’s estate (petitioner’s exhibit 12) indicates, and the evidence shows, that Gerda Devlin was employed in a nursing home, earning approximately $400 per week. The respondent received Social Security disability as his only source of income. Neither owned any real property. They both shared the expenses from their combined incomes, including the rent. The respondent also paid the funeral expenses of Gerda Devlin.
Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) provides, in relevant part, that if the “tenant has permanently vacated the housing accommodation, any member of such tenant’s family, as defined in section 2520.6(o) of this Title, who has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years, or where such person is a ‘senior citizen,’ or a ‘disabled person’ as defined in paragraph (4) of this subdivision, for a period of no less than one year, immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship, if for less than such periods, shall be entitled to be named as a tenant on the renewal lease.” A “senior citizen” is defined in Rent Stabilization Code (9 NYCRR) § 2520.6 (p) as “[a] person who is 62 years of age or older.” The respondent was 72 years old when Gerda Devlin died. Therefore, he satisfies the time requirement of the statute to claim succession rights if he has resided in the apartment as his primary residence for one year *699 prior to the death of the tenant of record. The credible evidence demonstrates that the respondent, in fact, resided in the subject apartment as his primary residence for approximately eight years immediately prior to the death of Gerda Devlin (1992-2000).
Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2) defines “family member” as including “[a]ny other person residing with the tenant or permanent tenant in the housing accommodation as a primary or principal residence, respectively, who can prove emotional and financial commitment, and interdependence between such person and the tenant or permanent tenant.” The court finds that the respondent has satisfied his burden of proof from the exhibits and his uncontroverted credible testimony that he and the deceased tenant of record lived together in an emotionally and financially interdependent relationship sufficient to qualify the respondent as the equivalent of a family member within the meaning of the statute. A fair interpretation of the documentary and demonstrative evidence supports the conclusion that the respondent’s and Gerda Devlin’s living arrangement and lifestyle coupled with the intermingling of their assets and expenses are consistent with those of a marital relationship.
The petitioner contends that the evidence shows a lack of the required financial interdependence. The petitioner argued that among the factors listed in Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2) to be considered in determining financial interdependence are, “sharing of or relying upon each other for payment of household or family expenses, and/or other common necessities of life,” and “intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, personal and real property, credit cards, loan obligations, sharing a household budget for purposes of receiving government benefits, etc.” (§ 2520.6 [o] [2] [ii], [iii]). The petitioner stressed that Gerda Devlin maintained a separate checking account (petitioner’s exhibit 11). The petitioner elicited testimony from the respondent on cross-examination that the rent was paid by Gerda Devlin’s personal checks drawn on her account and the respondent would sign her name on her checks and tender them to the petitioner. The respondent, also, testified that his Social Security income was deposited into his account by direct deposit and that he would withdraw money from his account and deposit it into Gerda Devlin’s checking account. From that account the rent was paid by Ms. Devlin’s checks. Respondent stated that he was *700 authorized by Gerda Devlin to sign her name to her checks and that it was he who tendered all rent checks. He further testified that he contributed to the payment of the rent because part of the money in Gerda Devlin’s checking account, against which rent checks were drawn, was his.
The respondent, on cross-examination, stated that he and Gerda Devlin maintained two separate bank accounts and that his income was deposited into his account and Gerda Devlin’s into her account. He also stated that he would withdraw money from his account and deposit it into her account. The evidence, however, shows that the only active accounts during the period that respondent and Gerda Devlin lived together were Gerda Devlin’s checking account (petitioner’s exhibit 11) and the joint passbook account (respondent’s exhibits N-l, N-2). The court notes that the joint account had been the respondent’s alone, but was changed on January 22, 1990 to a joint account adding Gerda Devlin as the secondary name on the account. Brenda Boden, an officer of North Fork Bank, testifying under subpoena of the petitioner, also verified that the respondent was the primary account holder and that Gerda Devlin was secondary on the account. An examination of the bank statements (respondent’s exhibits N-l, N-2) shows that Social Security funds were directly deposited each month into the joint account and that withdrawals were made on a regular basis. There was no testimony or evidence offered that Gerda Devlin was a recipient of Social Security. Indeed, the Social Security funds could not have been Gerda Devlin’s because, according to the records of Surrogate’s Court (petitioner’s exhibit 12), Gerda Devlin was only 58 years old at the time of her death and was employed. Moreover, various amounts were regularly deposited into Gerda Devlin’s checking account and the rent was indeed paid from her account. (Petitioner’s exhibit 11.)
It is clear, therefore, when the respondent stated that his Social Security income was directly deposited into “his” account, that he was referring to the joint account of which he was the primary account holder. Although the respondent did not show a paper trail of deposits in his name into the joint account and withdrawals by him from that account and deposits by him into Gerda Devlin’s account, and the court cannot definitively identify any sums in Gerda Devlin’s account as funds originating from the respondent, the records are consistent with respondent’s testimony that his income was directly deposited into his account and that withdrawals were made from his account into Gerda Devlin’s checking account for pay *701 ment of the rent. The court, therefore, finds the respondent’s testimony credible in this regard. Where, as here, a couple’s income is very limited, a lack of extensive proof of significant financial interdependence is not preclusive of a finding of sufficient emotional and financial interdependence. (See, 176 E. 3rd St. v Wright, NYLJ, Jan. 19, 2001, at 26, col 5 [App Term, 1st Dept].) In any event, the respondent’s financial contribution to the relationship is shown by the fact that he added Gerda Devlin to his own preexisting account into which his sole source of income was deposited, giving Gerda Devlin unfettered access to those funds.
The respondent also testified on cross-examination that he paid Gerda Devlin’s funeral expenses from the proceeds of her $10,000 life insurance policy and not from his own income. Therefore, the petitioner argues, the life insurance policy does not evidence a committed, financially interdependent family relationship. This, however, obscures the fact that the proceeds of Gerda Devlin’s life insurance policy belonged to the respondent as the beneficiary. Even if Gerda Devlin’s intention in taking out the life insurance was to provide for her funeral, the proceeds nevertheless were the respondent’s money to do with as he pleased. He chose to use part of the proceeds to bury Gerda Devlin. The fact remains that they were the sole named beneficiaries to each other’s life insurance policies and they did not see fit to provide any other policies for the benefit of any other family members other than each other.
The petitioner pointed out that the respondent was not the administrator of Gerda Devlin’s estate and his name did not appear in the affidavit in support of the application for letters of administration that listed Gerda Devlin’s surviving family members. (Petitioner’s exhibit 12.) The petitioner argues that such absence is dispositive of the issue of emotional commitment.
The court disagrees. No negative inference can be drawn from the fact that the respondent was not named as administrator of Gerda Devlin’s estate. Letters of administration were applied for and granted to Gerda Devlin’s mother. Moreover, the fact that the aforementioned affidavit lists Gerda Devlin’s mother, four sisters and three children of a predeceased sister as her surviving family, and not the respondent, does not indicate that there was no committed familial relationship as defined in the Rent Stabilization Code or that such a relationship was not recognized by members of Gerda Devlin’s family. The respondent’s name could not appear in the affidavit listing *702 surviving family because nontraditional family relationships are not recognized under the Estates, Powers and Trusts Law, the Surrogate’s Court Procedure Act or case law. While an emotionally and financially interdependent committed relationship, as defined in Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2), qualifies for succession rights under rent regulation, it does not qualify for inheritance under the laws of intestacy. (See, EPTL 4-1.1, 4-1.2.)
The court notes that Gerda Devlin’s mother had to provide proof that the decedent’s funeral expenses were paid before letters could be granted. The application for letters of administration contains a copy of the itemized funeral bill indicating that it was paid in full by the respondent, whose relationship to Gerda Devlin is described therein as that of companion. It is significant that while Gerda Devlin was survived by a parent and four adult siblings, it was the respondent who took responsibility for her last affairs. Vincent Davi, the funeral director, testified that the respondent paid for and made all the funeral arrangements and saw to it that Gerda Devlin was properly interred. It was the respondent who made possible the granting of letters of administration to Gerda Devlin’s mother by paying for the funeral, and the paid bill with his name on it was submitted to the Surrogate’s Court as a necessary exhibit.
The evidence is clear and convincing that the respondent and Gerda Devlin maintained an emotionally and financially interdependent committed relationship. They lived together for over eight years as a loving couple, sharing all aspects of their lives. They traveled as a couple, socialized as a couple, held each other out as a couple, named each other as the sole beneficiaries of their respective life insurance policies, maintained a joint bank account and combined what little resources they had to pay the basic expenses of living. Finally, when Gerda Devlin died, the respondent alone took care of and paid for all her funeral arrangements. Although it was not shown that there was a total intermingling of their finances, “this fact, by itself, does not require a finding that they were not family members as defined in RSC [9 NYCRR] §2520.6[o]. Even in traditional marriages, particularly those between older people who have previously been married and who have children from those previous marriages, it is not uncommon to find that there is not a total intermingling of finances. The Code provision does not require that there be such total intermingling, only that there be an ‘emotional and financial commitment, and *703 interdependence.’ ” (Slope Spaces v Vasquez, NYLJ, Oct. 19, 1999, at 29, col 1 [App Term, 2d Dept].)
In assessing the requisite emotional and financial commitment and interdependence, Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2) specifically states that “no single factor shall be solely determinative.” The factors listed in the statute to consider in making the determination, such as sharing expenses and intermingling finances, are merely suggestions and not requirements. Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2) is a codification of the holding in Braschi v Stahl Assoc. Co. (74 NY2d 201), which established succession rights for nontraditional family members in rent controlled apartments, and it incorporates the factors articulated in Braschi as guidelines to consider in determining whether one qualifies as a nontraditional family member. (See, Bims Realty Corp. v Durham, NYLJ, Sept. 18, 1997, at 30, col 2 [App Term, 2d Dept].) However, as the Court of Appeals stressed, “These factors are most helpful, although it should be emphasized that the presence or absence of one or more of them is not dispositive since it is the totality of the relationship as evidenced by the dedication, caring and self-sacrifice of the parties which should, in the final analysis, control.” (74 NY2d 201, 213.)
Based upon the totality of the evidence adduced with respect to the relationship of the respondent and the deceased tenant, the court finds conclusively that the relationship was that of a devoted couple living together in a committed interdependent marital union. Accordingly, final judgment of possession is awarded in favor of the respondent and the petition is dismissed. The respondent is entitled to a renewal lease in his own name.