OPINION OF THE COURT
Edward H. Lehner, J.
*673 The prime issue raised on the motions in these five separate actions is whether the defendant tenants therein are entitled to remain in possession pursuant to the Rent Stabilization Law as a consequence of leases they had entered into with an individual who a court subsequently determined acquired the deed to the subject building through fraud and therefore set aside the transfer nunc pro tunc.
On August 26, 1994, the decedent Agnes Seals, as sole shareholder of 306 East 119th Street, Inc., conveyed title to the property at 306 East 119th Street (the building) to David Aviles. In October 1998, the executors of her estate commenced an action in this court to set aside the transfer on the ground that it was procured through fraud and undue influence upon the 81-year-old Seals. In connection therewith, a notice of pendency was filed on October 23, 1998. A jury at the initial trial rendered judgment in favor of Aviles finding that the conveyance was valid. However, that determination was overturned on appeal (Sepulveda v Aviles, 308 AD2d 1 [1st Dept 2003]). Upon retrial, the deed was, by judgment dated August 17, 2004, “set aside nunc pro tunc [and] . . . deemed null and void,” and the building was transferred to the executors who, on August 30, 2004, sent notice to the tenants to pay “your rent or use and occupancy” to the new managing agent.
While defendant Lasister apparently leased his apartment from Aviles shortly prior to the filing of the notice of pendency (transcript at 24), the other defendants in these actions first leased their apartments from him subsequent thereto. None of the defendants was made a party to the Aviles litigation, nor is any claim made that any of them were in any way involved in the fraud (transcript at 17) or aware of the claim thereof at the time of the leasing, other than constructively through the filing of the notice of pendency. It is acknowledged that Aviles registered the leases under the Rent Stabilization Law (transcript at 23) and treated defendants as tenants under said law, giving them appropriate renewal leases. Defendants paid their rent to Aviles until notified of the judgment against him in August 2004.
These five actions were commenced by the executors in April 2005 seeking (i) declarations that the defendants have no valid leasehold interests, (ii) judgments of ejectment, and (iii) orders for the payment of use and occupancy from September 1, 2004. After the commencement of these actions and the filing of the present motions by the executors, the building was conveyed by *674 them to SFK Realty LLC in May 2005 (transcript at 13). By stipulation dated June 27, 2005, said transferee was substituted as party plaintiff in each of the actions.
Before the court are motions by plaintiff in each action for a declaration that the defendants therein have no valid leasehold interest, and a request for an immediate trial on the claim of ejectment and a requirement for the payment of use and occupancy. While the defendants’ cross motions to dismiss for lack of jurisdiction were withdrawn (transcript at 36-38), there remains before the court their motions to dismiss pursuant to CPLR 3211 (a) (7).
The question to be resolved herein requires a balancing of the rights of the defendants, all but one of whom became tenants of Aviles after the filing of the notice of pendency but none of whom possessed any knowledge of the fraud committed, as contrasted with that of plaintiff who acquired title to the building with full knowledge of the claims of defendants but claims to stand in the shoes of the executors.
The laws regulating rents “are remedial in nature and designed to promote the public good . . . [with the] intent [of] favoring the protection of tenants” (Braschi v Stahl Assoc. Co., 74 NY2d 201, 208-209 [1989]). “[T]he public policy sought to be advanced . . . [by said laws] is to promote the availability of affordable housing units” (Cox v J.D. Realty Assoc., 217 AD2d 179, 185 [1st Dept 1995]). “An overarching goal of the RSL . . . is to afford some measure of security to occupants so they do not lose their scarce dwelling space due to unilateral, oppressive activities from more powerful entities in the societal equation, whether they be landlords or employers or both” (Manocherian v Lenox Hill Hosp., 84 NY2d 385, 397 [1994]), and “[r]emedial statutes should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible” (Lesser v Park 65 Realty Corp., 140 AD2d 169, 173 [1st Dept 1988]).
While lease agreements entered into after the filing of a notice of pendency may be voidable (West 56th & 57th St. Corp. v Pearl, 242 AD2d 508 [1st Dept 1997]; Blanchard v Eisenpress, 200 F Supp 2d 334 [SD NY 2002]), here the equities of the unique fact pattern alleged in the complaints clearly warrant declarations that the defendants are entitled to have the opportunity to remain in possession as tenants under the Rent Stabilization Law. As indicated above, there is no claim that any of the defendants were in any way involved in the fraud upon *675 Ms. Seals or had any knowledge thereof at the time of entering into their respective leases, nor is there any dispute that they have executed appropriate renewal leases under the Rent Stabilization Law tendered to them by Aviles during their periods of occupancy. To permit the eviction by the plaintiff, which acquired title to the building after the executors filed the instant motions and which does not in any manner assert that it was not fully aware of the facts set forth herein, would not be consonant with the afore-described intent behind the enactment of the Rent Stabilization Law.
However, the right of any defendant to remain in possession as declared herein is conditioned on that tenant paying to plaintiff by December 15, 2005 all monies that have not been paid as rent or use and occupancy for the period from September 1, 2004 to December 2005 at the rate set forth in the tenant’s most recent lease. Should any tenant not make such payment by said date, plaintiff may move on notice for a judgment of ejectment and a warrant of eviction. Any tenant timely making such payment shall be entitled to a renewal lease in a form in compliance with the Rent Stabilization Law for a one- or two-year period, at the tenant’s option, the decision with respect to which the tenant shall notify plaintiff by December 15. The rental to be set forth in such renewal shall be at the rate set forth in the most recent lease executed by the tenant and Aviles, increased by the current Guidelines Board authorizations. Plaintiff is directed to send such leases by December 31, 2005 to each tenant who fully and timely pays the afore-directed past-due monies, which leases shall provide for terms to commence on February 1, 2006. To be effective, the renewal must be returned by the tenant to plaintiff by January 15, 2006.