530 Second Ave. Co., LLC 
 Petitioner-Landlord-Respondent, 
against
Lillian Zenker, Respondent-Appellant.



Respondent Lillian Zenker appeals from a final judgment of the Civil Court of the City of New York, New York County (Sabrina B. Kraus, J.), entered on or about February 10, 2014, after a nonjury trial, which awarded possession to landlord in a holdover summary proceeding.




Per Curiam.
Final judgment (Sabrina B. Kraus, J.), entered on or about February 10, 2014, affirmed, with $25 costs.
We agree that respondent Lillian Zenker failed to meet her "affirmative obligation" of establishing succession rights to the rent stabilized tenancy as a nontraditional family member of the deceased tenant (see Rent Stabilization Code [9 NYCRR] § 2523.5[e]). While respondent and tenant may have lived together in a close relationship at one time, it is not disputed that the parties separated in 1988 and respondent then lived elsewhere for some 15 years. Although respondent moved back into the apartment in 2003 - because she was facing eviction from her basement apartment in Queens - there was no evidence that she thereafter resided with tenant in a relationship characterized by "emotional and financial commitment and interdependence" (see 9 NYCRR § 2523.5 [b][1]). There was neither testimony from friends, neighbors, or family members corroborating a family-type relationship between the two, nor any documentary or other credible evidence that respondent and tenant intermingled finances, jointly owned property or formalized legal obligations (see GSL Enters. v Lopez, 239 AD2d 122 [1997]; Seminole Realty Co. v Greenbaum, 209 AD2d 345 [1994]). To the contrary, the evidence showed and the court expressly found that respondent's relationship with the tenant during the relevant period was that of "friends, roommates and business colleagues."
In response to our dissenting colleague's pedantic opinion, suffice it to say that the Appellate Division, First Department, in a case cited by the dissent, has cautioned that "factual findings of the trial court should not be disturbed upon appeal unless it is obvious that its conclusions could not be reached under any fair interpretation of the evidence" (WSC Riverside Dr. Owners LLC v Williams, 125 AD3d 458, 459 [2015], lv dismissed 25 NY3d 1221 [2015]). We also note that the dissenter's criticisms of the experienced trial judge are unwarranted and in no way justified by the record.
Respondent's present challenge to the parties' pretrial stipulation is both unpreserved and lacking in merit.
I concur I concur I concur
530 Second Avenue Co., LLC. v Lillian Zenker 15-032 March 2015 Term
Hon. Doris Ling-Cohan
Dissenting Opinion
I respectfully dissent with the determination that respondent, Lillian Zenker (Zenker), was a mere "friend, roommate, or business colleague" of the deceased tenant, Richard Montgomery (Montgomery) and would reverse the Civil Court's order now on appeal, thereby granting succession rights to respondent Zenker, as a nontraditional "family member" (see Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1] ["RSC"]). By affirming the decision below, the majority has now authorized trial courts to consider a factor explicitly directed by the legislature not to be considered and has proclaimed that it is proper for a trial court to completely ignore the relevant statute (RSC § 2520.6 [o] [2]) and the eight (8) factors explicitly set forth for consideration by the legislature therein, in succession cases. As explained below, the trial judge erred in failing to cite to, or consider, any of the relevant factors listed in the Rent Stabilization Code, and instead relied on a factor explicitly barred from consideration by the RSC. Additionally, pro se respondent fully established at the trial that she met all of the eight (8) factors listed in the RSC and that her caring, long-term relationship with Montgomery, of over 30 years, was characterized with the requisite "emotional and financial commitment, and interdependence" (Rent Stabilization Code [9 NYCRR] § 2520.6 [o] [2]), entitling her to succession.
The Applicable Law
The Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2), not discussed or even mentioned by the trial judge, defines "[f]amily member" as including: "[a]ny other person residing with the tenant...who can prove emotional and financial commitment, and interdependence between such person and the tenant...". Although the Rent Stabilization Code makes explicit that "no single factor shall be solely determinative, evidence which is to be considered in determining whether such emotional and financial commitment and interdependence existed, may include, without limitation, such factors as listed below...: (i) longevity of the relationship; (ii) sharing of or relying upon each other for payment of household or family expenses, and/or other common necessities of life; (iii) intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, personal and real property, credit cards, loan obligations, sharing household budget for purposes of receiving government benefits, etc.; (iv) engaging in family-type activities by jointly attending family functions, holidays and celebrations, social and recreational activities, etc.; (v) formalizing of legal obligations, intentions and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, granting each other a power of attorney and/or conferring upon each other authority to make health care decisions each for the other, entering into a personal relationship contract, making a domestic partnership declaration, or serving as a representative payee for purposes of public benefits, etc.; (vi) holding themselves out as family members to other family members, friends, members of the community or religious institutions, [*2]or society in general, through their words or actions; (vii) regularly performing family functions, such as caring for each other or each other's extended family members, and/or relying upon each other for daily family services; (viii) engaging in any other pattern of behavior, agreement, or other action which evidences the intention of creating a long-term, emotionally committed relationship" (id.). Notwithstanding that the trial court failed to cite to or consider any of these factors, as detailed below, respondent satisfied all eight (8) of the listed factors in the RSC. 
Even under the standard articulated in WSC Riverside Dr. Owners LLC v Wiliams, 125 AD3d 458, 459 [1st Dept 2015], lv dismissed 25 NY3d 1221 [2015], relied upon by the majority, reversal is appropriate as the only "factual finding" made by the trial judge below, and relied upon, was explicitly barred by the Rent Stabilization Code. Specifically, the lower court erred in making the factual finding that "by her admission" Zenker and the decedent "were not romantically involved" and relying solely on this factual finding in her one (1) page, double spaced, discussion[FN1]
n, thereby completely ignoring the applicable factors listed in the Rent Stabilization Code (see 9 NYCRR 2520.6 [o] [2]), without making any relevant factual findings, or, indeed even making a passing reference to any of the statutory factors, which are to be considered in deciding whether a respondent proved an emotional and financial commitment and interdependence, with the statutory tenant. The trial judge not only did not discuss any of the relevant factors, or make any factual findings as to any of the factors, but she also failed to cite to the relevant statute, or, any case law. 

While respondent's relationship with Montgomery, during the last eight (8) years of his life, was admittedly platonic (after the couple had a previous romantic relationship lasting for approximately nine [9] years), the lack of a sexual relationship is not a relevant factor that a court is permitted to consider (see 9 NYCRR 2520.6 [o] [2]). In fact, contrary to what the lower court did, the Rent Stabilization Code explicitly states that, "[i]n no event would evidence of a sexual relationship between such persons be required or considered...", in determining whether such "emotional and financial commitment and interdependence" existed (9 NYCRR 2520.6 [o] [2]). Thus, it was reversible error for the trial court to focus solely on the lack of a sexual relationship and not to consider the factors that the Rent Stabilization Code provides, in determining whether an emotional and financial commitment and interdependence existed.

Instead of what the trial court did, the Court of Appeals has made clear that, in determining whether an individual is entitled to succession, a court is to look to the factors outlined in the Rent Stabilization Code, "including the exclusivity and longevity of the relationship, the level of emotional and financial commitment, the manner in which the parties have conducted their everyday lives and held themselves out to society, and the reliance placed upon one another for daily family services"(Braschi v Stahl Assocs. Co., 74 NY2d 201, 212-213 [1989]; see Rent Stabilization Code [9 NYCRR] § 2520.6 [o] [2]). The presence or absence of one or more of such factors "is not dispositive since it is the totality of the relationship as evidenced by the dedication, caring, and self-sacrifice of the parties which...control" (Braschi v Stahl Assocs. Co., 74 NY2d at 213).
Satisfaction of All Eight RSC Factors

Here, all of the eight (8) factors in Rent Stabilization Code (9 NYCRR) § 2520.6 (o)(2) were met by respondent Zenker. In reviewing the relevant factors as articulated by the Rent Stabilization Code and case law, which the lower court entirely failed to do, the evidence produced at trial reveals that respondent and decedent's over 30-year emotionally committed relationship was similar to that of a traditional family-type relationship, such that they relied on each other, with Montgomery willingly providing total financial support to respondent, and respondent performing the "daily family services" (9 NYCRR § 2520.6 [o] [2] [vii]), including doing his laundry. It is undisputed that respondent lived with Montgomery in the one bedroom apartment during the eight (8) years immediately preceding his death, as well as for an additional nine (9) years, prior to such time. It is also undisputed that respondent was entirely financially dependent on Montgomery, from the time she moved back into the subject apartment in 2003, until the time of his death in 2011. During the last eight (8) years living together, Montgomery paid for all of the rent for the subject apartment, the utilities, and other household items, as well as for the couple's weekly restaurant meals. Respondent's sole means of income from 2003 until Montgomery's death, was her modest "employment" with Montgomery's home business and Montgomery also paid for an accountant to prepare respondent's tax returns. Respondent was, in essence, Montgomery's widow, having been totally supported by him financially, while respondent performed all the household domestic chores including cleaning, doing his laundry and cooking, from the food for which he paid (see Arnie Realty Corp. v Torres, 294 AD2d 193 [1st Dept 2002][respondent who lived with deceased tenant for eight (8) years prior to tenant's death and was financially supported by tenant, while respondent provided domestic support, entitled to succession]; St. Marks Assets, Inc. v Herzog, 196 Misc 2d 112, 113 [App Term, 1st Dept 2003] [tenant entitled to succession as a nontraditional family member, where "tenant financially supported the household while respondent, who was not employed, performed various home duties"]). In fact, the funeral home worksheet prepared after Montgomery's death, which was admitted into evidence, lists Zenker as Montgomery's wife and demonstrates that the couple held themselves out as family members to society, a factor to be considered under the RSC (9 NYCRR § 2520.6 [o] [2] [vi]).

As further evidence of the couple's closeness and emotional commitment, respondent testified that when she moved back into the subject apartment, Montgomery welcomed her back - notwithstanding that the apartment only had one bedroom - which he sacrificed for respondent for the entire eight (8) years prior to his death, while he slept on the living room couch. Also, numerous cards and notes in which Montgomery expressed his deep love for respondent were admitted into evidence.

After Montgomery's death, respondent had the responsibility of making the arrangements and paying for his funeral and burial. Also, respondent testified without objection that she was the sole beneficiary of Montgomery's 401K, and that the couple shared a joint bank account (see 9 NYCRR 2520.6 [o] [2] [v]; Roberts Ave v Sullivan, 2003 NY Slip Op 51091[U][App Term, 1st Dept 2003][in reversing the trial court's determination that the relationship at issue was merely a "friendship of roommates", the Appellate Term considered respondent's arrangement for and payment of decedent's burial, as a factor, in determining that respondent was a non-traditional family member entitled to succession]). Significantly, in this case, there was no testimony or proof at the trial of any beneficiaries to Montgomery's estate, other than respondent (cf. GSL [*3]Enters. Inc. v Lopez, 239 AD2d 122 [1st Dept 1997][where decedent/tenant executed a power of attorney in favor of his sister and amended his will to include his desire that she "inherit" the apartment rather than respondent, evidence was insufficient to establish an emotional and financial commitment and interdependence]).

Further, respondent and Montgomery "regularly performed family functions" such as caring for each other and "engaged in family type activities, by jointly attending family functions, holidays and celebrations, and social and recreational activities", which are relevant factors under the Rent Stabilization Code that the trial judge failed to consider (9 NYCRR 2520.6 [o] [2] [iv] and [vii]). It is undisputed that the record reflects that respondent and Montgomery ate meals together at home and in restaurants, and accompanied one another to medical appointments, as well as to the hospital (see id.). While the majority points to that, at the trial, "neither testimony from friends, neighbors, or family members corroborating a family-type relationship between the two, nor any documentary or other credible evidence that Zenker and Montgomery intermingled finances, jointly owned property or formalized legal obligations", nevertheless, there was an abundance of unrefuted evidence that the relationship between Zenker and Montgomery was one of longevity of over 30 years and intense emotional and financial commitment, as evidenced by the way the couple conducted their daily lives, held themselves out to society, and relied upon each other for financial and daily family services (see Braschi v Stahl Associates Co., 74 NY2d at 212-213). Significantly, it is well settled that, "[t]he absence of documentary evidence of financial interdependence does not undermine an otherwise valid succession claim where the totality of the circumstances evinces a long-term relationship [such as the one at issue herein] characterized by emotional and financial commitment" (St. Marks Assets, Inc. v Herzog, 196 Misc 2d at 113 [citation omitted]; see also RHM Estates v Hampshire, 18 AD3d 326 [1st Dept 2005]["[w]hile the statute considers intermingling of finances, the absence of this factor...does not negate the conclusion that [tenant] and respondent had [a] family-like relationship"]; WSC Riverside Drive Owners LLC v Williams, 125 AD3d 458, 459 [1st Dept 2015][the Appellate Division, in reversing the Appellate Term's reversal of the Civil Court's finding of succession, noted "that in considering whether a person may be a considered a family member'..., no single factor shall be solely determinative...'" and that a "modest intermingling of finances does not [necessarily] negate the conclusion...[of] a family-like relationship"]; Arnie Realty Corp. v Torres, 294 AD2d at 193 [even in the absence of documentary evidence of financial interdependence, respondent who lived with deceased tenant for eight (8) years prior to tenant's death and was financially supported by tenant, while respondent provided domestic support, entitled to succession]; Roberts Ave v Sullivan, 2003 NY Slip Op 51091[U][App Term, 1st Dept 2003][despite a lack of documentary evidence of intermingling finances, the Appellate Term determined that respondent was a non-traditional family member entitled to succession]). 

This is particularly true here, where respondent appeared at the trial in this case, pro se, and, thus, handicapped by her lack of legal knowledge as to evidentiary rules, so that when she attempted to provide additional documentary evidence consisting of "several hundred pages", as quantified by the judge (Tr. at 129), much of it was not in a form acceptable to the court. Indeed, a large portion of the trial transcript is comprised of long discussions as to the admissibility of documents, rather than actual testimony. It is noted that, at no point during the trial, or in her [*4]decision, did the trial judge discuss the relevant statutory factors which pro se respondent needed to fulfill, in her attempt to prove her claim of succession to the subject apartment. Nor was pro se respondent ever presented with the text of the Rent Stabilization Code (9 NYCRR) § 2520.6 (o)(2) listing the factors to be considered, and simply asked how she satisfies the definition of a nontraditional family member, entitled to succession. 

As this was not a straightforward nonpayment proceeding and the statutory factors were never listed in the pleadings, an unrepresented litigant would have no basis to know what factors the court was obligated to consider. It is noted that the within proceeding was commenced as a nonpayment proceeding and converted to a holdover proceeding, by stipulation, and, thus, a self represented litigant would not even be aware of the applicable Rent Stabilization Code section, much less the relevant factors; nor was she ever apprised by the judge of the proceedings of the applicable RSC section, or of its factors to be considered, thereby depriving her of a full opportunity to be heard and defend herself. Nothing in the nonpayment pleadings gave Zenker notice of the specific grounds of the holdover. Nor did the bare-bones stipulation converting it into a holdover notify her of the grounds to evict. It appears that the first notice that the basis was "succession" is when the trial judge mentioned the word to her in the beginning of the trial, at which she appeared pro se. Nevertheless, respondent's testimony of an emotionally committed relationship, of a long duration, and her satisfaction of all of the eight (8) factors to be considered under Rent Stabilization Code (9 NYCRR) § 2520.6 (o)(2), was unrefuted. At the very minimum, this matter should be remanded to the trial court, to further establish the record and for a full examination of each factor under the Rent Stabilization Code.

The two cases relied upon by the majority, Seminole Realty Co. v Greenbaum (209 AD2d 345 [1st Dept 1994]) and GSL Enters. Inc. v Lopez (239 AD2d 122 [1st Dept 1997]), are distinguishable. In Seminole Realty Co. v Greenbaum, the respondent never "jointly celebrated most major holidays or attended important celebrations with each other's families" (Seminole Realty Co. v Greenbaum 209 AD2d 345, 346 [1st Dept, 1994]). Whereas, here, respondent supplied pictures, at trial, of the decedent and respondent celebrating numerous special occasions and holidays, with one another's families. Although the photos, provided at trial, were not during the relevant eight year period, there is no dispute, that, at the very least, respondent and decedent celebrated the holidays together. Nevertheless, as indicated, respondent Zenker satisfied all of the relevant factors listed in Rent Stabilization Code (9 NYCRR) § 2520.6 (o)(2).

Additionally, the facts of GSL Enters. Inc. v Lopez (239 AD2d 122 [1st Dept 1997]) are remarkably different from the within case. Significantly, in GSL Enters. Inc. v Lopez, "the tenant [actually] executed a power of attorney in favor of his sister, and amended his will to include his desire that his sister inherit' the apartment [rather than the respondent]" (239 AD2d at 122). Here, there was no will evidencing Montogomery's desire that the subject apartment be bequeathed to any individual other than respondent Zenker. In fact, there was unrefuted evidence identifying his wish that respondent Zenker be taken care of after his passing, indicating a close caring family relationship. Respondent testified that Montgomery told her where all his valuables were located, that he wanted her to have everything, that Montgomery had a 401(k), of which she was a beneficiary, and, admitted into evidence was a letter from decedent to respondent, dated April 23, 1996, stating that Montgomery wanted "to do right by" respondent. Nor was there any evidence that there were any other beneficiaries other than her. While the [*5]majority relies on GSL Enters Inc v Lopez because similarly there was, "no testimony from friends, neighbors, or family members corroborating a family-type, as opposed to close-friend-and-roommate relationship", such lack of testimony of a family-type relationship from others does not negate the totality of the unrefuted evidence of the quasi-familial relationship she had with Montgomery. Further, perhaps, if pro se litigant had the benefit of counsel at trial, she might have been able to meet this unarticulated standard of the need for corroborative testimony (even when her testimony was unrefuted), which is not listed in the Rent Stabilization Code. 

While due deference is usually given to the trial court's determination with respect to issues of credibility, and, notwithstanding that an intermediate appellate court must "take into account that in a close case the trial judge has the advantage of seeing and hearing the witnesses" (Marinoff v Natty Realty Corp., 34 AD3d 765, 767; Zere Real Estate Servs., Inc. v Parr Gen. Contr. Co., Inc., 102 AD3d at 772), nevertheless, where a matter is tried without a jury, the authority of this court on appeal is as broad as that of the trial court and we may render a judgment warranted by the facts (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]). Here, notably, the lower court, in its decision now on appeal, erred in failing to even reference the statute (or any case law), or evaluate any of the relevant statutory factors, in its determination as to whether respondent proved entitlement to succession as a nontraditional family member and did not make any express findings as to credibility. While the majority unfortunately characterizes this failure to cite to or consider the statute as "unwarranted" "criticisms of an experienced judge", nonetheless, even "experienced judges" are obligated to consider and cite to the relevant law, and provide an unrepresented litigant with due process by indicating the relevant RSC section, to which the litigant's case is to be determined, given that the pleadings failed to so advise her.[FN2]
 Clearly, the role of an appellate judge is to review cases, rather than give a free pass to judges merely because they are "experienced judges", which is a grave disservice to litigants.
Conclusion
As stated by the Court of Appeals, "the term family [member], as used in [the Rent Stabilization Code], should not be rigidly restricted to those people who have formalized their relationship...[t]he intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life" (Braschi v. Stahl Assoc. Co., 74 NY2d at 211). Here, in view of the totality of the relationship, the sufficient factors under the RSC (which it is undisputed that the relevant statute was not reviewed or cited to by the trial judge), exist to warrant a finding that respondent Zenker and Montgomery exhibited the dedication, caring, and self-sacrifice, seen in familial relationships, for respondent to be entitled to succession rights, as a non-traditional family member (see id. at 213). The lower court and the majority's description of respondent's relationship with Montgomery, as that of mere "friends, roommates and business colleagues" is contrary to the undisputed evidence which, instead, established a long-term committed and emotional family-type relationship, of a kind entitled to succession, under the RSC. Their relationship, of over 30 years, involved typical day-to-day family-type chores and responsibilities entirely [*6]uncharacteristic of a mere "friend, roommate or business" relationship, including, inter alia, Zenker doing Montgomery's laundry, preparing their meals daily, dining together in their home and in restaurants, Montgomery supporting and paying for all of Zenker's needs, accompanying each other to medical appointments and making and financing funeral and burial arrangements. Simply put, ordinarily, mere "friends, roommates and business colleagues" do not cook meals for each other on a daily basis, nor do they do each other's dirty laundry and other domestic chores - as Zenker undisputably did for Montgomery, during the last eight (8) years of his life. Nor do mere "friends, roommates and business colleagues" provide total financial support to one another, as indisputably Montgomery did for Zenker. Family members, however, do perform these acts, particularly those in a long-term committed, caring and self-sacrificing relationship, such as Zenker and Montgomery. Accordingly, I would reverse or, at a minimum, remand for consideration of the eight (8) statutory factors, under the Rent Stabilization Code (9 NYCRR 2520.6 [o] [2]), which the trial judge failed to even consider, cite to, or discuss in its decision. 

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Decision Date: February 22, 2017



Footnotes

Footnote 1: In contrast, the procedural history of the case was longer than the discussion, in the three and a half (3 ½) page decision. 

Footnote 2: In fact, even extremely experienced judges of this country's highest court are not above making mistakes and have admitted errors about the law (Marcia Coyle, When Justices Offer Their Regrets, It's Usually About the Law, NYLJ, July 18, 2016 at 2, col 1).