OPINION OF THE COURT
Laurie L. Lau, J.
Petitioner, Pedro J. Colon (Petitioner), commenced this licensee holdover summary proceeding against respondent, Cirila Frias (Respondent), on the grounds that Respondent’s license to remain in apartment 2-B at 224 Pacific Street, in *37 Brooklyn (the Apartment) expired upon the death of Aurora Dopico, the rent-controlled tenant of record.
Respondent moved for summary judgment, claiming the right to remain in the Apartment as a remaining family member pursuant to section 2204.6 (d) (1) to (3) of the New York City Rent and Eviction Regulations (Regulations) (9 NYCRR parts 2200-2210). Section 2204.6 (d) (3) provides, in pertinent part, that:
"For the purposes of this subdivision:
"(i) family member is defined as * * * any other person residing with the tenant in the housing accommodation as a primary residence who can prove emotional and financial commitment, and interdependence between such person and the tenant. Although no single factor shall be solely determinative, evidence which is to be considered in determining whether such emotional and financial commitment and interdependence existed, may include, without limitation, such factors as listed below. In no event would evidence of a sexual relationship between such persons be required or considered.
"(a) longevity of the relationship;
"(b) sharing of or relying upon each other for payment of household or family expenses and or other common necessities of life;
"(c) intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, personal and real property, credit cards, loan obligations, sharing a household budget for purposes of receiving government benefits, etc.;
"(d) engaging in family-type activities by jointly attending family functions, holidays and celebrations, social and recreational activities, etc.;
"(e) formalizing of legal obligations, intentions, and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, conferring upon each other a power of attorney and/or authority to make health care decisions each for the other, entering into a personal relationship contract, making a domestic partnership declaration, or serving as a representative payee for purposes of public benefits, etc.;
"(f) holding themselves out as family members to other family members, friends, members of the community or religious institutions, or society in general, through their words or actions;
"(g) regularly performing family functions, such as caring *38 for each other or each other’s extended family members, and/ or relying upon each other for daily family services;
"(h) engaging in any other pattern of behavior, agreement, or other action which evidences the intention of creating a long-term, emotionally committed relationship”.
The Regulations recently were upheld by the Court of Appeals in Rent Stabilization Assn. v Higgins (83 NY2d 186 [1993]).
Following the dictates of the Regulations, this court held a hearing. At the hearing, Respondent credibly testified that she lived with Ms. Dopico for 34 years until Ms. Dopico’s death on December 15, 1987. Throughout that time they each contributed, half and half, toward their expenses, including rent, utilities, food and other household items. The only vacations which they ever took in that 34-year span they took together. One time they visited Ms. Dopico’s homeland, Spain. They also took two trips to Florida. At all other times, they remained in Brooklyn, until Ms. Dopico’s death. Their sole sources of income were Social Security checks which each received. Respondent credibly testified that they had no checking accounts and no credit cards. Instead, every month they cashed their Social Security checks and paid for their expenses in cash. They maintained separate passbook savings accounts into which they put whatever surplus there was from their Social Security checks. Ms. Dopico’s passbook savings accounts named Respondent as the "Totten” beneficiary. Ms. Dopico left no assets other than her personal belongings and whatever money there was in the passbook savings accounts. Although Ms. Dopico left no will, Respondent credibly testified that Ms. Dopico told her that whatever she had would be Respondent’s — the money in Ms. Dopico’s savings accounts passed to Respondent because Ms. Dopico had established a Totten trust for her and all of Ms. Dopico’s personal belongings became Respondent’s.
Respondent confirmed the fact that she had lived in the Apartment during this 34-year span by submitting documentation which placed her at the Apartment during that time. Her naturalization papers set forth the Apartment as her residence as do the records of the Board of Elections.
As to Respondent’s relationship to Ms. Dopico, whom she thought of as a "sister”, Ms. Dopico submitted photographs, taken over the years, of them at family functions and of them on the three vacations which they took. When asked about friends inviting Ms. Dopico to their home for holiday func *39 tians, Respondent credibly testified that all her friends were Ms. Dopico’s friends and vice versa. Indeed, Respondent submitted correspondence from their friends addressed to both Respondent and Ms. Dopico. Additionally, Respondent credibly testified that although Ms. Dopico was invited elsewhere, Ms. Dopico chose to go with Respondent to the family functions of the Frias family. Respondent also submitted a portrait, taken by a professional photographer, of Ms. Dopico and herself, dressed in their finest, each with matching pearl necklaces, when both were young. When asked why the photograph was taken, Respondent credibly testified that they wanted to show that they were sisters.
Respondent’s niece, Eleanor Frias, credibly testified that her family celebrated all the important holidays and other important family moments together and that Ms. Dopico had been to most of those functions over the period of time that she and Ms. Frias resided together, except when Ms. Dopico was ill. Eleanor Frias confirmed this statement by submitting photographs she and other family members had taken over the years at Christmas, Easter, Thanksgiving, anniversaries, weddings, birthdays and Holy Communion functions of the Frias family. Ms. Dopico was present on all those occasions. In these pictures, Ms. Dopico and Respondent can be seen as growing older over the years. Eleanor Frias also credibly testified that her niece and nephew referred to Ms. Dopico as their "aunt” and that she also considered Ms. Dopico as a family member.
Finally, Respondent testified that she cared for Ms. Dopico during her last illness, and after her death arranged and paid for Ms. Dopico’s funeral.
Petitioner called no rebuttal witnesses and conceded at the close of Respondent’s case the fact that Respondent had lived in the Apartment with Ms. Dopico for many years and that they were close.
Petitioner urges the court to note, however, that this was not a gay relationship, and that therefore Respondent is not entitled to remain in the Apartment, citing Braschi v Stahl Assocs. Co. (74 NY2d 201 [1989]). Petitioner urges the court to view the relationship between Respondent and Ms. Dopico as that of close friends who also were roommates and nothing more. Further, Petitioner urges the court to view the absence of Ms. Dopico’s life insurance as indicating that Ms. Dopico had no intent to take care of Ms. Frias upon her death. Finally, Petitioner urges the court to consider Petitioner’s *40 plight in being forced to allow a 75-year-old woman to remain in the Apartment for a rent of $105 per month.
The court finds, based upon all the credible documentary and testimonial evidence adduced at the hearing, that Respondent’s relationship with Ms. Dopico satisfies the criteria set forth in the Regulations of "emotional and financial commitment and interdependence.” Accordingly, under the Regulations, Respondent is a "family member” of Ms. Dopico and is entitled to remain in the Apartment as a tenant protected by the Regulations. Respondent resided in the Apartment with Aurora Dopico for 34 years and their relationship, based upon the factors enumerated in the Regulations, clearly establishes that, but for the lack of a blood relationship, Aurora Dopico and Cirila Frias were sisters. It is difficult to imagine a relationship between two people better illustrating the relationship of family members as contemplated by the Regulations.
As it must, the court rejects the analysis urged by Petitioner. The Regulations specifically provide that no evidence of a sexual relationship is to be required or even considered. A gay relationship clearly is not the only type of relationship envisioned by the Regulations.
The court rejects Petitioner’s view that Ms. Dopico’s failure to take out life insurance for Respondent’s benefit shows that Ms. Dopico did not consider Respondent to be her sister. Aside from the specific admonition of the Regulations that no one factor should be determinative, the court is mindful of the fact that Respondent and Ms. Dopico were elderly women of limited means and did not employ any of what might be considered "modern” financial methods: they had no checking accounts or credit cards and they did not "invest” in anything, including life insurance. Ms. Dopico did what she knew; she listed Respondent as the Totten beneficiary on her passbook savings accounts.
Finally, the court rejects Petitioner’s plea that he not be forced to allow Respondent to remain in the Apartment paying $105 per month in rent. That is the point of the Regulations. The Court of Appeals upheld the Regulations in Rent Stabilization Assn. v Higgins (supra) and Petitioner has not offered any other challenge to the Regulations or their application here.
Accordingly, Respondent is granted summary judgment against Petitioner and this proceeding is dismissed.