*537 OPINION OF THE COURT
Loren Baily-Schiffman, J.
In connection with the instant guardianship proceeding, a housing court matter, Crown Realty, LLC v Sandra Davidson (index No. 88609/08), was transferred from Civil Court, Kings County, to this court for trial. Petitioner, Crown Realty, LLC, seeks to evict respondent, Sandra Davidson, from the rent-stabilized apartment that she occupies. The trial was conducted on March 23, 2010 and April 12, 2010. At trial, respondent conceded petitioner’s prima facie case and petitioner conceded that respondent had resided in the subject premises, 150 Crown Street, apartment Fll, for more than 10 years. The parties stipulated that the only issue for the court to decide is whether respondent is entitled to succession rights.
Findings of Fact
Respondent, Mindy Lakin, the daughter of the tenant of record, and Diana Atwell Beaugene, a neighbor, testified on behalf of respondent. Ms. Lakin is the daughter of the deceased tenant of record, Rebecca Lakin, who died on February 8, 2007 at age 84. She is the first cousin of the respondent. Ms. Lakin testified credibly that she lived in the subject premises from her birth until 1978. In 1976 or 1977 respondent became unable to continue to live on her own. She had been living alone in the apartment her parents had also occupied until their deaths. As Ms. Lakin’s mother, Rebecca Lakin, had promised respondent’s mother, Rebecca Lakin’s sister, that she would take care of respondent Sandra Davidson, respondent moved into the subject premises with Mindy Lakin and her mother. From that time until the present respondent has continued to live in the subject premises. Respondent and Rebecca Lakin slept in separate beds in the same bedroom. Mindy Lakin moved out of the premises in 1978.
Mindy Lakin testified that her mom and respondent Sandra Davidson were “attached at the hip” meaning they did everything together, took care of each other, visited relatives and vacationed together. While the utility accounts remained in the name of Rebecca Lakin’s deceased husband, Rebecca paid the bills sometimes with the assistance of respondent in physically making out the checks. Respondent worked and may have contributed to the expenses of the household. Mindy Lakin also testified that her mom had a “love/hate” relationship with respondent because respondent’s needs impinged on her mom’s independence.
*538 Diana Atwell Beaugene, who has lived at 150 Crown Street for 15 years, testified that respondent and Rebecca Lakin — who she called Riwie — regularly vacationed in Florida together, went food shopping, out to dinner and to have their nails done together and she often joined respondent and Riwie in these pursuits. She vacationed in Florida twice with her daughter, respondent and Riwie. Ms. Atwell Beaugene testified that respondent gave cash to Riwie for trips to Florida which Riwie charged on her credit card, that respondent paid for clothes— both hers and Riwie’s — for meals in restaurants, groceries and for them to get their nails done.
Sandra Davidson testified that she has lived at the subject premises for 38 years. She is 59 years old. She worked for the New York City Human Resources Administration for 39 years, retiring in 2008. She testified that she never had a bank account. She would cash her paychecks at a check cashing place and use cash to pay for her needs. She gave her aunt some money (approximately $100) every time she got paid. She gave her aunt money toward groceries when they went food shopping. She paid when she and her aunt had their nails done. She paid for car service when she and her aunt took car service to the doctor. She and her aunt took care of the apartment they shared. Rebecca Lakin cleaned the apartment; Sandra dusted. Rebecca Lakin cooked; Sandra cleaned up. They celebrated holidays together with family and visited mutual friends together every few weeks. Family events were often at Sandra’s brother’s house in New Jersey and often Mindy Lakin would take Sandra and Rebecca Lakin to these events. Sandra traveled to Florida with her aunt about 20 times. These trips also included her aunt’s boyfriend, Ira Weiner. Sandra testified that her aunt was the pride and joy of her life and her family is not a happy one now that her aunt has died.
Conclusions of Law
Petitioner seeks recovery of the subject rent-stabilized premises from respondent on the ground that the tenant of record is deceased and respondent has no continuing right to occupy the premises. Respondent claims a right of succession based upon her qualification as a “family member” pursuant to Rent Stabilization Code (9 NYCRR) § 2520.6 (o) (2). This section of the Rent Stabilization Code defines “family member” as:
“Any other person residing with the tenant ... in the housing accommodation as a primary or princi *539 pal residence, respectively, who can prove emotional and financial commitment, and interdependence between such person and the tenant .... Although no single factor shall be solely determinative, evidence which is to be considered in determining whether such emotional and financial commitment and interdependence existed, may include, without limitation, such factors as listed below . . . :
“(i) longevity of the relationship;
“(ii) sharing of or relying upon each other for payment of household or family expenses, and/or other common necessities of life;
“(iii) intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, personal and real property, credit cards, loan obligations, sharing a household budget for purposes of receiving government benefits, etc.;
“(iv) engaging in family-type activities by jointly attending family functions, holidays and celebrations, social and recreational activities, etc.;
“(v) formalizing of legal obligations, intentions, and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, granting each other a power of attorney and/or conferring upon each other authority to make health care decisions each for the other, entering into a personal relationship contract, making a domestic partnership declaration, or serving as a representative payee for purposes of public benefits, etc.;
“(vi) holding themselves out as family members to other family members, friends, members of the community or religious institutions, or society in general, through their words or actions;
“(vii) regularly performing family functions, such as caring for each other or each other’s extended family members, and/or relying upon each other for daily family services;
“(viii) engaging in any other pattern of behavior, agreement, or other action which evidences the intention of creating a long-term, emotionally committed relationship.” (9 NYCRR 2520.6 [o] [2].)
These regulations were instituted following the Court of Appeals decision in Braschi v Stahl Assoc. Co. (74 NY2d 201 *540 [1989]). Braschi concerned whether the occupant of a rent-controlled apartment could succeed to the tenancy rights of the permanent tenant after they had lived together in the premises for more than 10 years as life partners until the death of the tenant. Because Braschi and most other reported cases concerning succession rights involve life partners, the regulations and case holdings stress factors that would apply to a relationship that is like a marriage. The payment of household expenses, the intermingling of finances, the formalizing of legal obligations, intentions, and responsibilities are all elements of a relationship you would look for to determine if the relationship was a marriage in all ways but for the legal imprimatur — the marriage license.
The relationship at bar is quite different than that of a marriage. The tenant of record is respondent’s aunt. There is a 27-year difference in their ages. Respondent was unable to live on her own and there had been a promise by tenant to her now-deceased sister, respondent’s mother, that she would look after respondent. The relationship between respondent and her aunt, for the purpose of determining succession rights, must be looked at from the perspective of a parent/adult child relationship and not that of a marriage. Did the occupants of the subject apartment behave in a manner that would evidence the relationship of a parent and adult child although they were not parent and child? If so, then respondent would be entitled to succession rights as would the adult child of a deceased tenant of record who had lived with the tenant for the requisite period of time. If the kind of interdependence and behavior to be expected from a parent and adult child has not been shown, then respondent is not entitled to succeed to the tenancy rights of her deceased aunt.
Fort Washington Holdings, LLC v Abbott (28 Misc 3d 364 [Civ Ct, NY County 2010]) involves an aunt and nephew who lived together for 30 years until the aunt’s death and developed a relationship akin to that of a mother and son. The tenant of record took in her nephew “[i]n a last-ditch effort to avoid his further institutionalization.” (Id. at 365.) In facts similar to those at bar, the aunt and nephew shopped together, contributed in various degrees to the expenses of their living, went to the doctor together and took care of their apartment together. They “so completely intertwined their personal lives that they were the functional equivalent of parent and child (a close parent and child, at that). . . . They lived in *541 harmony and symbiosis” {id. at 369-370). In overturning a jury verdict for petitioner, the court held that the respondent’s failure to prove financial interdependence did not, in and of itself, require a rejection of respondent’s right to succeed to the subject apartment.
RHM Estates v Hampshire (18 AD3d 326 [1st Dept 2005]) concerns a deceased elderly tenant of record and an unrelated younger man who lived with the tenant of record for 15 years without paying rent. They shared holiday and birthday celebrations, travel and meals together. There is no evidence that respondent had any other address during the 15-year period that he lived with the tenant of record. The court held that the absence of an intermingling of finances does not negate the “family-like” relationship that they shared {id. at 327) and granted respondent succession rights.
In Colon v Frias (162 Misc 2d 36 [Civ Ct, Kings County 1994]), the court held that two elderly women had lived in the subject apartment as sisters until the death of the tenant of record despite their lack of a blood relationship. “It is difficult to imagine a relationship between two people better illustrating the relationship of family members as contemplated by the Regulations.” {Id. at 40.) Summary judgment was granted to respondent.
In the case at bar, Sandra Davidson lived with the tenant of record, Rebecca Lakin, for 38 years until Ms. Lakin’s death. Thereafter Ms. Davidson continued to live in the subject apartment. Ms. Davidson’s mother was clearly concerned about Sandra’s inability to live on her own when, in contemplating her own death, she asked her sister, Ms. Lakin, to promise that she would take care of “Sandy.” That is what Ms. Lakin did. For 38 years, from the time Sandra Davidson was about 21 years old, she lived with Ms. Lakin and her family in the subject apartment. Ms. Lakin’s daughter, Mindy, lived in the apartment when Sandra first came to live there. And Sandra continued to live there until Ms. Lakin’s death in 2007. They were family members, but not of the type recognized by the Rent Stabilization Code as entitling Ms. Davidson to automatically succeed to her aunt’s interest in the subject apartment.*
*542 Respondent clearly established at trial that Ms. Lakin and Ms. Davidson engaged in family-type activities by jointly attending family functions, holidays and celebrations, social activities, etc. They regularly traveled to Florida, spent the Jewish holidays together with other family members and visited “family” friends together. They had an emotional bond and were, as Mindy Lakin testified, “attached at the hip.” Upon the death of Ms. Davidson’s mother, Sandra Davidson moved from the home she had lived in with her parents and came to live with her aunt because she could not live on her own. From that time to her death, Rebecca Lakin became Ms. Davidson’s de facto mother. Their relationship, as testified to, was much more than one of roommates, as petitioner would have this court find. They were emotionally dependent on each other. Ms. Lakin lived her promise to her sister to take care of “Sandy” and, thus, exhibited the caring a mother has for a child although that “child” is an adult albeit one with needs much greater than most adult children. Ms. Davidson took care of her aunt to the best of her limited ability. They were a family unit.
Conclusion
For all the foregoing reasons, the court finds that respondent has proved a nontraditional family relationship between respondent, Sandra Davidson, and the tenant of record, Rebecca Lakin. Accordingly, Sandra Davidson may succeed to the interest of the tenant of record in the subject apartment. The petition is dismissed.

 It is interesting that had this been a rent-controlled apartment, Ms. Davidson would have automatically succeeded to her aunt’s interest in the subject apartment. (NY City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d] [3].)